UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARÍA MAGDALENA NÚÑEZ MALDONADO ,

        Civil Action No. _____

        Plaintiff,

        **COMPLAINT**

-against-

        **JURY TRIAL DEMANDED**

186-08 AMC INC. and ANDREW NISTHALAL,
individually,

        Defendants.
------------------------------------------------------------------X

Plaintiff MARÍA MAGDALENA NÚÑEZ MALDONADO, by and through her attorneys, Stillman Legal, P.C., as and for her Complaint against Defendants 186-08 AMC INC. and ANDREW NISTHALAL, individually (collectively, "Defendants"), alleges as follows, upon knowledge as to herself and her own acts, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This is a civil action for unpaid minimum wages, unpaid overtime compensation, unpaid spread-of-hours pay, statutory damages, liquidated damages, interest, and attorneys' fees and costs arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 et seq. (the "FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 190 et seq. and §§ 650 et seq. (the "NYLL"), together with the regulations promulgated thereunder at title 12 of the New York Codes, Rules and Regulations, part 142 (the "Miscellaneous Industries Wage Order").

2. Plaintiff MARÍA MAGDALENA NÚÑEZ MALDONADO was employed by Defendants as a laundry worker at a laundry facility located at 3113 Westchester Avenue, Bronx, New York 10461, in Bronx County, from in or about late August 2021 until in or about May 2026.

3. Plaintiff performed manual, non-exempt laundry work, including sorting, washing, drying, folding, pressing, bagging, and tagging customers' garments and linens, operating and

cleaning commercial washing and drying machines, handling laundry detergents and chemicals, and attending to customers.

4.    Throughout her employment, Plaintiff regularly worked approximately fifty (50) hours per workweek. On occasion, Plaintiff worked six (6) days per week and worked shifts of approximately ten (10) to twelve (12) hours in a single day.

5.    Plaintiff recorded her arrival and departure each day on a fingerprint-based biometric timekeeping device supplied and controlled by Defendants. Defendants therefore possessed, or had the ability to obtain, contemporaneous records of the hours Plaintiff actually worked.

6.    From in or about late September 2021, when Plaintiff began working five (5) days per week, until in or about the end of 2024, Defendants paid Plaintiff a fixed sum of approximately $650.00 per workweek, delivered in cash in installments of approximately $1,300.00 every two weeks, without regard to the number of hours she actually worked. Spread across the approximately fifty (50) hours Plaintiff worked each week, that fixed sum yielded an effective hourly rate of approximately $13.00 per hour — below the minimum wage then in effect in New York City.

7.    Beginning in or about January 2025, when Defendants placed Plaintiff on their formal payroll for the first time, Defendants purported to pay Plaintiff on an hourly basis at a rate of $17.00 per hour, disbursing a portion of her wages by payroll check and the remainder in cash or by deposit. Defendants did not pay Plaintiff any overtime premium for hours worked in excess of forty (40) in a workweek at any point during her employment.

8.    An earnings statement issued to Plaintiff for the pay period of April 29, 2026 through May 12, 2026 reflects a pay rate of $17.0000 per hour and records only 28.42 hours for the entire two-week period — a fraction of the hours Plaintiff actually worked — and reflects no overtime

hours, no overtime rate, and none of the cash wages Defendants paid her outside the payroll system.

9. Defendants further failed to furnish Plaintiff with the wage notice required at the time of hiring by NYLL § 195(1)(a), and failed to furnish her with complete and accurate wage statements with each payment of wages as required by NYLL § 195(3).

10. Plaintiff brings this action individually to recover the wages and statutory damages to which she is entitled, together with liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

11. This Court has original subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, because those claims arise under the laws of the United States, and pursuant to 29 U.S.C. § 216(b), which authorizes an action to recover unpaid overtime compensation and liquidated damages under the FLSA in any federal or state court of competent jurisdiction.

12. This Court has supplemental jurisdiction over Plaintiff's New York State law claims pursuant to 28 U.S.C. § 1367(a). Those claims arise from the same employment relationship, the same pay practices, and the same workweeks as Plaintiff's FLSA claims, and therefore form part of the same case or controversy under Article III of the United States Constitution. The state-law claims do not raise novel or complex issues of state law, do not substantially predominate over the federal claims, and there exist no other compelling reasons for declining supplemental jurisdiction within the meaning of 28 U.S.C. § 1367(c).

13. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff performed all of her work for Defendants at 3113 Westchester Avenue, Bronx, New York 10461, which lies within Bronx County. Bronx County is assigned to the Southern District of New York by 28 U.S.C. § 112(b). Venue is additionally proper under 28 U.S.C. § 1391(b)(1) as to any Defendant who resides in this District.

15. This Court has personal jurisdiction over Defendants because they transact business, operate a place of business, and employ workers within the State of New York and within this District, and because the conduct complained of occurred within this District.

## PARTIES

**Plaintiff**

16. Plaintiff MARÍA MAGDALENA NÚÑEZ MALDONADO is an adult individual who resides in Bronx County, New York, within this District.

17. The payroll records issued to Plaintiff during her employment identify Plaintiff as "Maria M. Maldonado" at Plaintiff's residential address, and Plaintiff is the individual so identified.

18. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1), NYLL § 190(2), and NYLL § 651(5), and was a "manual worker" within the meaning of NYLL § 190(4).

19. At all times relevant to this Complaint, Plaintiff was a non-exempt employee. Her work was manual in nature and required no exercise of independent judgment or discretion with respect to matters of significance. Plaintiff did not manage the enterprise or any customarily recognized department or subdivision of it, did not direct the work of two or more other employees,

had no authority to hire or fire or to make recommendations regarding employment status, and performed no administrative, professional, executive, outside sales, or computer-related duties. None of the exemptions set forth in 29 U.S.C. § 213 or 12 NYCRR § 142-2.14 applies to Plaintiff.

20.    Plaintiff consents to be a party plaintiff in this action pursuant to 29 U.S.C. § 216(b) by the filing of this Complaint.

**Defendants**

21.    Upon information and belief, Defendant 186-08 AMC INC. (the "Corporate Defendant") is a business corporation organized under the laws of the State of New York that owns and operates the laundry facility located at 3113 Westchester Avenue, Bronx, New York 10461, in Bronx County.

22.    Upon information and belief, the Corporate Defendant conducts the business of that laundry facility under the assumed name, trade name, or "doing business as" designation "Clean Green Laundry." The earnings statement furnished to Plaintiff during her employment identifies her employer of record as "Clean Green Laundry, 3113 Westchester Ave, Bronx, NY 10461" — the same street address at which Plaintiff performed all of her work

23.    Upon information and belief, Defendant Andrew Nisthalal (the "Individual Defendant") is an adult individual who, at all times relevant to this Complaint, was the owner of the Corporate Defendant and exercised operational control over the laundry facility at which Plaintiff worked. Plaintiff and Defendants' other employees knew the Individual Defendant by the names "Andy" and "Adrian."

24.    At all times relevant to this Complaint, each Defendant was an "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(d), NYLL § 190(3), NYLL § 651(6), and 12 NYCRR § 142-2.14.

25. Defendants jointly employed Plaintiff and are jointly and severally liable to Plaintiff for the violations alleged in this Complaint.

## FLSA COVERAGE

26. At all times relevant to this Complaint, the Corporate Defendant operated a laundry facility open to the public and conducted its activities through unified operation and common control for a common business purpose. The Corporate Defendant is therefore an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1).

27. At all times relevant to this Complaint, Defendants employed approximately five (5) employees at the laundry facility, including Plaintiff.

28. Defendants' employees, including Plaintiff, regularly handled, sold, or otherwise worked on goods and materials that had been moved in or produced for interstate commerce. These goods and materials included, without limitation, commercial washing machines, commercial dryers, and pressing equipment; laundry detergents, bleaches, fabric softeners, starches, and other cleaning chemicals; wire and plastic hangers; plastic garment bags, laundry bags, and packaging materials; and cleaning supplies. Upon information and belief, none of the foregoing goods and materials was manufactured within the State of New York, and each was purchased from suppliers who obtained it through the channels of interstate commerce.

29. Upon information and belief, at all times relevant to this Complaint the Corporate Defendant had an annual gross volume of sales made or business done of not less than $500,000.00, exclusive of excise taxes at the retail level that are separately stated. This belief is based upon the size of the facility, its location on a commercial thoroughfare in the Bronx, the number of employees Defendants employed, the facility's daily hours of operation, and the volume

of customer laundry that Plaintiff personally processed on Defendants' behalf during her employment.

30.    The Corporate Defendant is accordingly an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), and Plaintiff was employed by that enterprise within the meaning of 29 U.S.C. §§ 206(a) and 207(a)(1).

31.    In the alternative and in addition, Plaintiff was individually engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a)(1). In the regular course of her duties, Plaintiff used and worked upon instrumentalities and materials that moved in interstate commerce, and, upon information and belief, accepted and processed customer payments transmitted through interstate banking, credit-card, and payment-processing networks. [ATTORNEY REVIEW BEFORE FILING: Plaintiff's personal handling of customer credit- or debit-card payments must be confirmed with the client; if it cannot be confirmed, the payment-processing allegation should be deleted and coverage pleaded on the enterprise theory alone.]

## EMPLOYER STATUS AND INDIVIDUAL LIABILITY

32.    At all times relevant to this Complaint, Defendants suffered or permitted Plaintiff to work within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7).

33.    Defendants possessed and exercised the power to hire and fire Plaintiff. Plaintiff was hired to work at Defendants' laundry in or about late August 2021 by Defendants' manager, Alma Florez, and her employment was terminated by Alma Florez in or about May 2026. At all times relevant to this Complaint, Alma Florez acted as Defendants' agent, on Defendants' behalf, and within the scope of the authority Defendants conferred upon her.

34.    Defendants supervised and controlled Plaintiff's work schedule and the conditions of her employment. Defendants set the days and hours Plaintiff was required to appear for work;

increased her schedule from approximately three (3) days per week to approximately five (5) days per week approximately one month after she was hired, in or about late September 2021; directed her to work additional days and extended shifts as the volume of laundry required; required her to record her time on Defendants' biometric time clock; and directed her to remain on duty through the periods that should have been available to her for meals.

35.    Defendants determined the rate and method of Plaintiff's compensation. Defendants' manager, Alma Florez, told Plaintiff what she would be paid; fixed her pay at approximately $650.00 per week; determined that it would be paid to her in cash every two weeks; informed Plaintiff of the change to a purported hourly rate of $17.00 beginning in or about January 2025; determined what portion of Plaintiff's wages would be paid by payroll check and what portion would be paid in cash or by deposit; and personally delivered Plaintiff's wages to her.

36.    Defendants maintained, or failed to maintain, Plaintiff's employment records, including the biometric timekeeping records generated each day that Plaintiff worked and the payroll records issued in connection with her wages.

37.    Upon information and belief, the Individual Defendant, by reason of his ownership of the Corporate Defendant and his control of its significant functions, established or approved the compensation policies and practices described in this Complaint, including the practice of paying employees a fixed weekly sum in cash without an overtime premium, the practice of paying a portion of Plaintiff's wages outside the payroll system after January 2025, and the failure to issue the wage notice and wage statements required by the NYLL. The Individual Defendant regularly visited the laundry facility, oversaw its operations, and had direct knowledge of the hours Plaintiff and other employees worked and the manner in which they were paid.

38.    Applying the economic realities of the relationship, each Defendant was Plaintiff's employer, and Defendants are jointly and severally liable for the unpaid wages, statutory damages, liquidated damages, interest, and fees sought in this Complaint.

## FACTUAL ALLEGATIONS

**Plaintiff's Employment and Duties**

39.    Plaintiff was employed by Defendants at their laundry facility located at 3113 Westchester Avenue, Bronx, New York 10461 from in or about late August 2021 until in or about May 2026.

40.    Plaintiff was employed as a laundry worker. Her duties consisted of manual labor and included sorting soiled garments and linens; loading, operating, and unloading commercial washing machines and dryers; measuring and applying detergents, bleaches, and softeners; folding, bagging, and tagging finished laundry; pressing garments; cleaning the machines and the premises; and receiving and returning customers' laundry.

41.    Plaintiff was paid on an hourly or fixed weekly basis and was never paid on a salary basis within the meaning of 29 C.F.R. § 541.602. Plaintiff was at all times a non-exempt employee entitled to the minimum wage and overtime protections of the FLSA and the NYLL.

**Plaintiff's Hours of Work**

42.    For approximately the first month of her employment, Plaintiff was scheduled to work approximately three (3) days per week. Beginning in or about late September 2021, and for the overwhelming majority of her employment thereafter, Plaintiff was scheduled to work approximately five (5) days per week.

43.    During the period in which Plaintiff was scheduled approximately five (5) days per week, she regularly worked approximately fifty (50) hours per workweek, or approximately ten (10) hours per day.

44.    In addition, Plaintiff was on occasion required to work a sixth (6th) day in a workweek, and on occasion worked shifts of approximately ten (10) to twelve (12) hours in a single day. In such workweeks, Plaintiff worked substantially more than fifty (50) hours.

45.    By way of illustration and not limitation, in a typical workweek during 2022, 2023, and 2024, Plaintiff worked five (5) shifts of approximately ten (10) hours each, for a total of approximately fifty (50) hours — approximately ten (10) hours in excess of forty (40).

46.    Defendants did not provide Plaintiff with bona fide meal periods. Plaintiff was not relieved of her duties for any uninterrupted meal period and instead worked continuously through the time that should have been available to her for a meal. All such time was time during which Plaintiff was suffered or permitted to work and constitutes compensable hours worked.

47.    On each day on which Plaintiff worked a shift of more than ten (10) hours, and on each day on which the interval between the beginning and the end of Plaintiff's workday exceeded ten (10) hours, the spread of Plaintiff's hours exceeded ten (10) hours within the meaning of 12 NYCRR § 142-2.4.

**Defendants' Timekeeping**

48.    Throughout her employment, Plaintiff clocked in at the beginning of each shift and clocked out at the end of each shift using a fingerprint-based biometric timekeeping device installed and controlled by Defendants.

49.    Defendants therefore possessed, or had the ability to obtain from their timekeeping vendor, an accurate contemporaneous record of the days and hours Plaintiff worked throughout her employment.

50.    Notwithstanding their possession of those records, Defendants did not compensate Plaintiff for all of the hours reflected in them, and the payroll records Defendants generated do not reflect all of the hours Plaintiff worked or all of the wages Defendants paid her.

**Plaintiff's Compensation**

51.    From in or about late September 2021, when Plaintiff began working approximately five (5) days per week, through in or about the end of 2024, Defendants paid Plaintiff a fixed sum of approximately $650.00 per workweek, disbursed in cash in installments of approximately $1,300.00 every two weeks. That sum did not vary with the number of hours Plaintiff actually worked.

52.    Divided across the approximately fifty (50) hours Plaintiff worked each week, that fixed weekly sum yielded a regular rate of approximately $13.00 per hour.

53.    The minimum wage applicable to Plaintiff's employment in New York City was $15.00 per hour from December 31, 2019 through December 31, 2023, and $16.00 per hour effective January 1, 2024, pursuant to NYLL § 652(1) and 12 NYCRR § 142-2.1. Plaintiff's regular rate of approximately $13.00 per hour was below each of those rates.

54.    Beginning in or about January 2025, Defendants changed Plaintiff's compensation to a purported hourly rate of $17.00 per hour, placed a portion of her wages on their formal payroll, and began disbursing that portion by payroll check while continuing to pay the remainder in cash or by deposit.

55.    The minimum wage applicable to Plaintiff's employment in New York City was $16.50 per hour effective January 1, 2025 and $17.00 per hour effective January 1, 2026, pursuant to NYLL § 652(1) and 12 NYCRR § 142-2.1.

56.    At no time during Plaintiff's employment did Defendants pay Plaintiff any premium whatsoever for hours worked in excess of forty (40) in a workweek. Defendants paid Plaintiff no more for her forty-first hour of work in a week than they paid her for her first.

57.    At no time during Plaintiff's employment did Defendants pay Plaintiff an additional hour of pay at the basic minimum hourly wage rate for any day on which the spread of her hours exceeded ten (10) hours.

58.    Defendants' practice of paying a substantial portion of Plaintiff's wages in cash or by deposit, outside the payroll system and unaccompanied by any record of the hours to which those wages corresponded, was designed to and did obscure the number of hours Plaintiff worked and the rate at which she was actually compensated.

**<u>Defendants' Failure to Provide the Wage Notice Required by NYLL § 195(1)</u>**

59.    At the time of Plaintiff's hiring, Defendants did not furnish Plaintiff with a written notice, in English or in Spanish (Plaintiff's primary language), containing her rate of pay and the basis thereof; any allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; and the employer's telephone number, as required by NYLL § 195(1)(a).

60.    Defendants did not furnish Plaintiff with such a notice at any time thereafter, including when Defendants changed the basis of her compensation in or about January 2025.

61. Defendants' failure to furnish the wage notice caused Plaintiff concrete injury. Because she was never told in writing what her rate of pay was, what her overtime rate was, or on what basis her pay was computed, Plaintiff had no means of measuring the cash sums Defendants handed her against the wages the law required Defendants to pay. Plaintiff consequently accepted the fixed cash payments Defendants gave her as correct, did not know that she was being paid below the minimum wage or that she was entitled to an overtime premium, and did not demand the additional wages she was owed. The absence of the required notice also deprived Plaintiff of the information she needed to make informed decisions about her employment; had she known her effective hourly rate fell below the statutory minimum and that no overtime premium was being paid, she could have demanded lawful wages or sought alternative employment. Plaintiff was thereby deprived of wages she would otherwise have pursued and received.

### Defendants' Failure to Provide Accurate Wage Statements Under NYLL § 195(3)

62. Throughout the period in which Defendants paid Plaintiff exclusively in cash, Defendants furnished Plaintiff with no wage statement of any kind with any payment of wages.

63. After Defendants placed a portion of Plaintiff's wages on the payroll in or about January 2025, the wage statements Defendants furnished were materially incomplete and inaccurate. The earnings statement issued to Plaintiff for the pay period April 29, 2026 through May 12, 2026 records 28.42 regular hours and gross pay of $483.14 for a two-week period, at a stated rate of $17.0000 per hour. Plaintiff in fact worked approximately one hundred (100) hours during that two-week period, and Defendants in fact paid her substantially more than $483.14 for it, the balance having been paid in cash or by deposit outside the payroll system.

64. The wage statements Defendants furnished therefore failed to state the actual number of hours Plaintiff worked; failed to state any number of overtime hours worked; failed to state any

overtime rate of pay; failed to state Plaintiff's actual regular rate of pay; and failed to state Plaintiff's actual gross wages, deductions, and net wages, as required by NYLL § 195(3).

65. Defendants' failure to furnish complete and accurate wage statements caused Plaintiff concrete injury. The statements Defendants did provide affirmatively misrepresented Plaintiff's hours and earnings, recording roughly one quarter of the hours she worked and omitting the cash portion of her wages entirely. Plaintiff, who was thereby led to believe that Defendants' records were consistent with the payments she received, was unable to detect that she was not being paid an overtime premium, was unable to identify or quantify the wages she was owed, and did not seek those wages during her employment. The absence of accurate statements also deprived Plaintiff of the documentation she needed to substantiate her actual earnings for purposes of obtaining credit, securing housing, filing accurate tax returns, and accessing public benefits or services - practical harms she experienced during and after her employment.

**Defendants' Recordkeeping and Willfulness**

66. Defendants failed to make, keep, and preserve accurate records of the wages, hours, and other conditions and practices of employment maintained by them with respect to Plaintiff, as required by 29 U.S.C. § 211(c) and 29 C.F.R. part 516, and by NYLL § 195(4) and 12 NYCRR § 142-2.6.

67. To the extent Defendants' records are inaccurate or inadequate, Plaintiff is entitled to prove the amount and extent of her uncompensated work as a matter of just and reasonable inference, and the burden shifts to Defendants to come forward with evidence of the precise amount of work performed or with evidence negating the reasonableness of the inference to be drawn from Plaintiff's evidence.

68.    Defendants' violations of the FLSA and the NYLL were willful. Defendants operated a business subject to the wage and hour laws for years; installed and used a biometric time clock that recorded the very overtime hours they declined to pay; retained a commercial payroll service and were therefore aware of their statutory obligations; nonetheless paid Plaintiff a flat weekly sum in cash irrespective of her hours; and, after placing Plaintiff partially on the payroll, continued to pay a substantial portion of her wages in cash without recording the corresponding hours. Defendants either knew that their conduct violated the FLSA and the NYLL or showed reckless disregard for whether it did.

69.    Defendants have not acted in good faith and had no reasonable grounds for believing that their failure to pay Plaintiff minimum wages, overtime compensation, and spread-of-hours pay complied with the FLSA or the NYLL.

**Conclusion of Plaintiff's Employment**

70.    Plaintiff's employment with Defendants ended in or about May 2026, when Defendants' manager, Alma Florez, terminated her.

71.    Plaintiff was never paid the minimum wages, overtime compensation, or spread-of-hours pay to which she was entitled during her employment, and Defendants have not paid those wages to her since her employment ended.

**FIRST CAUSE OF ACTION**

**Failure to Pay Overtime Compensation Under the FLSA**

**(29 U.S.C. § 207(a)(1) — Against All Defendants)**

72.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

73. At all times relevant to this Complaint, Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), and Plaintiff was their employee within the meaning of 29 U.S.C. § 203(e)(1) and was engaged in commerce or employed by an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

74. Pursuant to 29 U.S.C. § 207(a)(1), Defendants were required to compensate Plaintiff at a rate not less than one and one-half times her regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

75. Plaintiff regularly worked in excess of forty (40) hours per workweek, working approximately fifty (50) hours in a typical workweek and more in workweeks in which she worked a sixth day or extended shifts.

76. Defendants failed to pay Plaintiff any overtime premium for any hour worked in excess of forty (40) hours in any workweek, in violation of 29 U.S.C. § 207(a)(1).

77. Defendants' violations of 29 U.S.C. § 207(a)(1) were willful within the meaning of 29 U.S.C. § 255(a), and a three-year statute of limitations therefore applies.

78. As a direct and proximate result of Defendants' violations, Plaintiff has been damaged in an amount to be determined at trial, and is entitled pursuant to 29 U.S.C. § 216(b) to recover her unpaid overtime compensation, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs of the action.

## SECOND CAUSE OF ACTION

**Failure to Pay the New York Minimum Wage**

**(NYLL §§ 652, 663; 12 NYCRR § 142-2.1 — Against All Defendants)**

79. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

80. At all times relevant to this Complaint, Defendants were Plaintiff's employers within the meaning of NYLL §§ 190(3) and 651(6), and Plaintiff was their employee within the meaning of NYLL §§ 190(2) and 651(5).

81. Pursuant to NYLL § 652(1) and 12 NYCRR § 142-2.1, Defendants were required to pay Plaintiff at a rate not less than the applicable New York City minimum wage for each hour worked.

82. From in or about late September 2021, when Plaintiff began working approximately five (5) days per week, through in or about the end of 2024, Defendants paid Plaintiff a fixed weekly sum of approximately $650.00 for approximately fifty (50) hours of work, yielding a regular rate of approximately $13.00 per hour — below the $15.00 per hour minimum wage in effect through December 31, 2023 and below the $16.00 per hour minimum wage in effect from January 1, 2024.

83. Defendants thereby failed to pay Plaintiff the minimum wage required by the NYLL for each hour she worked during that period, in violation of NYLL § 652 and 12 NYCRR § 142-2.1.

84. Defendants' failure to pay Plaintiff the minimum wage was willful within the meaning of NYLL § 663.

85. As a direct and proximate result of Defendants' violations, Plaintiff has been damaged in an amount to be determined at trial, and is entitled pursuant to NYLL §§ 198(1-a) and 663(1) to recover her unpaid minimum wages, liquidated damages in an amount equal to one

hundred percent (100%) of the wages found to be due, prejudgment interest, reasonable attorneys' fees, and costs.

**THIRD CAUSE OF ACTION**

**Failure to Pay Overtime Compensation Under the New York Labor Law**

**(NYLL §§ 650 et seq.; 12 NYCRR § 142-2.2 — Against All Defendants)**

86.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

87.    Pursuant to 12 NYCRR § 142-2.2, Defendants were required to compensate Plaintiff at a rate not less than one and one-half times her regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, and, where Plaintiff's regular rate was below the applicable minimum wage, at a rate not less than one and one-half times the applicable minimum wage.

88.    Plaintiff regularly worked approximately fifty (50) hours per workweek throughout her employment, and more in workweeks in which she worked a sixth day or extended shifts.

89.    Defendants failed to pay Plaintiff any overtime premium for any hour worked in excess of forty (40) hours in any workweek throughout her employment, in violation of 12 NYCRR § 142-2.2.

90.    Defendants' failure to pay Plaintiff overtime compensation was willful within the meaning of NYLL § 663.

91.    As a direct and proximate result of Defendants' violations, Plaintiff has been damaged in an amount to be determined at trial, and is entitled pursuant to NYLL §§ 198(1-a) and 663(1) to recover her unpaid overtime compensation, liquidated damages in an amount equal to

one hundred percent (100%) of the wages found to be due, prejudgment interest, reasonable attorneys' fees, and costs.

### FOURTH CAUSE OF ACTION

### Failure to Pay Spread-of-Hours Compensation

### (12 NYCRR § 142-2.4 — Against All Defendants)

92.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

93.    Pursuant to 12 NYCRR § 142-2.4, an employee is entitled to receive one additional hour of pay at the basic minimum hourly wage rate for each day on which the spread of hours exceeds ten (10) hours.

94.    Plaintiff worked shifts of more than ten (10) hours, including shifts of approximately eleven (11) to twelve (12) hours, on numerous days during her employment, and on each such day the spread of her hours exceeded ten (10) hours.

95.    At all times prior to in or about 2025, Plaintiff was paid at a regular rate below the applicable minimum wage and was therefore entitled to spread-of-hours compensation for each such day. In addition, from in or about January 1, 2026 through the end of Plaintiff's employment, Plaintiff's stated rate of pay of $17.00 per hour equaled the applicable minimum wage, and Plaintiff was likewise entitled to spread-of-hours compensation for each day on which the spread of her hours exceeded ten (10) hours during that period.

96.    Defendants did not pay Plaintiff any spread-of-hours compensation for any such day, in violation of 12 NYCRR § 142-2.4. Defendants' failure to pay Plaintiff spread-of-hours compensation was willful within the meaning of NYLL 663.

97.    As a direct and proximate result of Defendants' violations, Plaintiff has been damaged in an amount to be determined at trial, and is entitled pursuant to NYLL §§ 198(1-a) and 663(1) to recover her unpaid spread-of-hours compensation, liquidated damages in an amount equal to one hundred percent (100%) of the amounts found to be due, prejudgment interest, reasonable attorneys' fees, and costs.

## FIFTH CAUSE OF ACTION

### Failure to Provide Wage Notice at the Time of Hiring

### (NYLL §§ 195(1), 198(1-b) — Against All Defendants)

98.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

99.    NYLL § 195(1)(a) required Defendants to provide Plaintiff, at the time of hiring, with a written notice, in English and in the language identified by Plaintiff as her primary language, setting forth her rate or rates of pay and the basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer and any "doing business as" names used by it; the physical address of the employer's main office or principal place of business and a mailing address if different; and the employer's telephone number.

100.    Defendants did not provide Plaintiff with the notice required by NYLL § 195(1)(a) at the time of her hiring or at any time thereafter.

101.    Defendants' failure caused Plaintiff concrete and particularized injuries. First, Plaintiff suffered an informational injury: NYLL  195(1) confers on every newly hired employee the right to receive, in writing, the basic terms of her compensation, and Defendants' withholding

of that information deprived Plaintiff of a substantive entitlement that she sought and would have used to monitor whether her pay conformed to the law. Second, because Plaintiff was never told in writing - in English or in her primary language, Spanish - what her rate of pay was, what overtime rate applied, or on what basis her pay was calculated, she had no benchmark against which to measure the undifferentiated cash sums Defendants handed her and no means of determining whether those payments satisfied the minimum wage or included an overtime premium. Third, the absence of the required notice left Plaintiff unable to make informed decisions about her employment; had she known her effective hourly rate fell below the statutory minimum and that Defendants were paying no overtime premium at all, she could have demanded the wages the law required or sought alternative employment at a lawful rate. Fourth, Defendants' failure to provide the notice rendered Plaintiff uniquely vulnerable to the very wage exploitation that occurred: Defendants paid her entirely in cash, off the books, at a sub-minimum rate, without any overtime premium, for over three years before partially placing her on the payroll - a scheme whose success depended on Plaintiff's ignorance of the compensation terms the statute required Defendants to disclose. The resulting harm bears a close relationship to a harm traditionally recognized as providing a basis for a lawsuit - specifically, the harm caused by a defendant's fraudulent concealment or omission of material information that the plaintiff was entitled to receive and on which the plaintiff would have acted. As a direct result of these injuries, Plaintiff accepted the cash payments Defendants gave her as correct, did not demand the additional wages she was owed, did not seek other employment at a lawful rate of pay, and was deprived of wages she would otherwise have pursued and received.

102.    Plaintiff is entitled pursuant to NYLL § 198(1-b) to recover statutory damages of fifty dollars ($50.00) for each workday that the violation occurred or continued to occur, up to a

maximum of five thousand dollars ($5,000.00), together with reasonable attorneys' fees, costs, and such other relief as the Court deems appropriate.

## SIXTH CAUSE OF ACTION

### Failure to Provide Accurate Wage Statements

### (NYLL §§ 195(3), 198(1-d) — Against All Defendants)

103.   Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

104.   NYLL § 195(3) required Defendants to furnish Plaintiff, with every payment of wages, a statement listing the dates of work covered by the payment; the name of the employee; the name, address, and telephone number of the employer; the rate or rates of pay and the basis thereof; gross wages; deductions; net wages; and, for a non-exempt employee, the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.

105.   Defendants furnished Plaintiff with no wage statement at all during the period in which they paid her exclusively in cash, and furnished materially incomplete and inaccurate wage statements thereafter, as described above.

106.   Defendants' failure caused Plaintiff concrete and particularized injuries. First, during the period from the commencement of Plaintiff's employment until in or about January 2025, Defendants furnished Plaintiff with no wage statement of any kind with any payment of wages, wholly depriving her of information to which she was statutorily entitled and which she would have used to monitor whether her compensation complied with the law. Second, after Defendants began issuing wage statements in or about January 2025, the statements they furnished

were not merely incomplete but affirmatively false: the earnings statement for the pay period of April 29, 2026 through May 12, 2026 recorded only 28.42 hours for a two-week period in which Plaintiff worked approximately one hundred (100) hours, omitted all overtime hours and any overtime rate, and reflected none of the cash wages Defendants paid outside the payroll system. These misrepresentations led Plaintiff to believe that Defendants' official records were consistent with the payments she received and thereby concealed the full magnitude of Defendants' underpayment. Third, the absence of accurate wage statements - first through total omission, then through affirmative misstatement - deprived Plaintiff of the ability to verify in real time whether she was receiving the minimum wage, whether she was being paid an overtime premium, and whether the total wages paid to her each period matched the hours she had worked, thereby preventing her from timely identifying and asserting her rights during the course of her employment. Fourth, the inaccurate and incomplete statements deprived Plaintiff of reliable documentation of her actual hours and earnings, impairing her ability to substantiate her income for purposes of obtaining credit, securing housing, filing accurate tax returns, and accessing public benefits or services - practical harms she experienced during and after her employment. Fifth, the resulting harm bears a close relationship to harms traditionally recognized as providing a basis for a lawsuit - specifically, the harm caused by a party's failure to render an accurate accounting of amounts owed, and the harm caused by the communication of materially false information on which the recipient relied to her detriment. As a direct result of these injuries, Plaintiff did not know that she was being denied an overtime premium, could not identify or quantify the full extent of the wages she was owed, did not seek those wages during her employment, and was left without the contemporaneous records she needed to reconstruct her actual earnings.

107.    Plaintiff is entitled pursuant to NYLL § 198(1-d) to recover statutory damages of two hundred fifty dollars ($250.00) for each workday that the violation occurred or continued to occur, up to a maximum of five thousand dollars ($5,000.00), together with reasonable attorneys' fees, costs, and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff MARÍA MAGDALENA NÚÑEZ MALDONADO respectfully requests that this Court enter judgment in her favor and against Defendants 186-08 AMC INC. and ANDREW NISTHALAL, jointly and severally, and award the following relief:

a.    Declaring that Defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 207(a)(1), and that those violations were willful within the meaning of 29 U.S.C. § 255(a);

b.    Declaring that Defendants violated the minimum wage, overtime, spread-of-hours, wage notice, and wage statement provisions of the New York Labor Law and the regulations promulgated thereunder, and that those violations were willful;

c.    Awarding Plaintiff her unpaid minimum wages under the New York Labor Law, in an amount to be determined at trial;

d.    Awarding Plaintiff her unpaid overtime compensation under the FLSA and, in the alternative, under the New York Labor Law, in an amount to be determined at trial;

e.    Awarding Plaintiff her unpaid spread-of-hours compensation under 12 NYCRR § 142-2.4 for all qualifying days throughout her employment, in an amount to be determined at trial;

f.    Awarding Plaintiff liquidated damages under 29 U.S.C. § 216(b) in an amount equal to one hundred percent (100%) of her unpaid overtime compensation or, in the

alternative and to the extent greater, liquidated damages under NYLL §§ 198(1-a) and 663(1) in an amount equal to one hundred percent (100%) of her unpaid minimum wages, overtime compensation, and spread-of-hours compensation, it being understood that Plaintiff does not seek a cumulative award of liquidated damages under both statutes for the same unpaid wages;

g.  Awarding Plaintiff statutory damages pursuant to NYLL § 198(1-b) for Defendants' failure to provide the wage notice required by NYLL § 195(1), in the amount of fifty dollars ($50.00) per workday, up to a maximum of five thousand dollars ($5,000.00);

h.  Awarding Plaintiff statutory damages pursuant to NYLL § 198(1-d) for Defendants' failure to provide complete and accurate wage statements as required by NYLL § 195(3), in the amount of two hundred fifty dollars ($250.00) per workday, up to a maximum of five thousand dollars ($5,000.00);

i.  Awarding Plaintiff prejudgment interest on her New York Labor Law compensatory damages pursuant to NYLL § 198(1-a) and N.Y. C.P.L.R. §§ 5001 and 5004;

j.  Awarding Plaintiff post-judgment interest pursuant to 28 U.S.C. § 1961;

k.  Awarding Plaintiff her reasonable attorneys' fees and the costs and disbursements of this action pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1-a) and 663(1);

l.  Awarding Plaintiff any additional amounts recoverable under NYLL § 198(4) in the event judgment is not satisfied within ninety (90) days after it becomes final; and

m.  Granting such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
        Julio 26,, **2026**

Respectfully submitted,

**STILLMAN LEGAL, P.C.**

By: *Lina F Stillman, Esq.*
Lina Stillman, Esq.
42 Broadway, 12th Floor
New York, New York 10004
Tel: (212) 832-1000
www.StillmanLegalPC.com

Attorneys for Plaintiff MARÍA MAGDALENA
NÚÑEZ MALDONADO